TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00607-CR







Ed Willie Magee, III, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 48,057, HONORABLE WILLIAM C. BLACK, JUDGE PRESIDING







 A jury convicted Ed Willie Magee, III of aggravated robbery. The trial court
assessed sentence at sixty years in prison. Magee complains that insufficient evidence placed him
at the scene of the robbery and that the court erroneously admitted evidence of an extraneous
offense. We will affirm the judgment.


BACKGROUND


 It is undisputed that the manager and owner of Monoghan Properties were robbed
at gunpoint on August 4, 1997. The manager testified and described four masked men, two armed
with pistols, who came into the Monoghan Properties office. One of the men wore dark jogging
clothes and black shoes, another was wearing a battle dress uniform (BDU) and army shoes, and
a third was wearing darker pants; the fourth was watching the door and generally out of the
manager's range of vision. The men's masks varied--one had a ski mask, while another used
panty hose and another used sheer fabric. The robbers told him to lie on the floor and bound his
hands behind him with strong tape. The robbers all shouted instructions to each other. After
rifling through drawers and the manager's pockets, they took money from his wallet, his driver
license, his keys, and his cellular telephone. They took a rent collection bag and rolls of quarters. 
They kicked in the door to the back office where the property owner was. 

 The property owner told a similar story. He was napping when the robbers kicked
in the door and told him at gunpoint to close his eyes. He complied. One gunman told him to
take deep breaths since he had had a heart attack; the owner had no idea how the gunman knew
that. They took his money, his driver license, and his watch. He recalled one of the gunmen
wore a long-sleeved black and white top with a shirt or jacket. 

 The first policeman on the scene was directed by two witnesses to follow four men
who were running through an apartment complex that paralleled Monoghan Apartments. He found
four men matching the description radioed to him and ordered them onto the ground. One man
ran away and another wearing BDUs walked away. One complied with the command and the
officer grabbed the fourth and put him on the ground. Magee was wearing a white t-shirt under
a blue Georgetown Hoyas jersey, while the other was wearing a white t-shirt under his jacket or
shirt. None of the men was holding weapons or wearing masks. In the middle of where the four
men had been was a green military laundry bag. Inside the bag were two loaded pistols, gloves,
clothing hoods, sheer fabric, and duct tape; also inside were the apartment owner's and manager's
driver licenses, a cell phone, a watch, and loose cash.

 The manager identified the men from a distance by their clothing and shoes as the
robbers. He later identified property found in the suspects' laundry bag as property taken from
him during the robbery. Though the masks used during the robbery prevented the manager and
the owner from recognizing Magee in court, they did identify the clothing in evidence as that worn
by the robbers. A police detective identified Magee as the man arrested who was wearing the
Georgetown jersey and the black-and-white shoes.

 The court charged the jury on the elements of aggravated robbery and on
responsibility as a party. The jury found him guilty and the court assessed sentence at sixty years
in prison.


DISCUSSION


 Magee challenges both his conviction and his sentence. One point of error
challenges the sufficiency of the evidence to support the conviction. The second point challenges
the admission of evidence during the sentencing phase of trial.

 By point of error one, Magee contends insufficient evidence supports the jury
verdict of guilty in that there is no affirmative link to place him in the office of the Monoghan
Apartments during the time of the robbery. When reviewing the legal sufficiency of the evidence,
we view the evidence in the light most favorable to the prosecution to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). The "outstanding reasonable
hypothesis of innocence" test has been abolished in legal sufficiency challenges. Geesa v. State,
820 S.W.2d 154, 161 (Tex. Crim. App. 1991); Hepner v. State, 966 S.W.2d 153, 157 (Tex.
App.--Austin 1998, no pet.). When reviewing the factual sufficiency of the evidence, we view
the evidence without a presumption, but can set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996). The jury is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. Miller v. State, 909 S.W.2d 568, 593
(Tex. App.--Austin 1995, no pet.).

 Legally and factually sufficient evidence supports the conviction. The victims
testified that four men robbed them; Magee was found nearby, minutes later, with three other men
standing around a laundry bag filled with the robbery proceeds and guns like those used in the
robbery. The victims testified regarding the clothing that the robbers were wearing, which
resembles the clothing worn by Magee and others found around the laundry bag. A victim
identified the men arrested as the robbers by their clothes; Magee was one of the men arrested. 
Evidence tending to exculpate Magee is that he was not wearing a mask when apprehended, that
he did not actually possess either the stolen items or the guns when apprehended, and that the
robbery victims failed to identify him in court and did not describe exactly his clothing. Magee
contends that the State failed to exclude every other reasonable hypothesis except his guilt. 
Reviewing the evidence using the standards discussed above, we conclude that a rational jury
could find that Magee was involved in the aggravated robbery at least as a party, if not as one of
the gunmen. We overrule point one.

 By point of error two, Magee contends that the court's admission at the punishment
stage of extraneous offense evidence tainted its ability to render a fair sentence. He complains
about evidence of extraneous offenses, but does not specify what objection was erroneously
overruled or make a specific reference to the record. He thus failed to present the error
adequately. See Tex. R. App. P. 38.1(f) & (h). Nevertheless, we will attempt to review the
assigned error.

 We apply different standards to review different types of decisions. We defer
almost totally to a trial court's determination of the historical facts that the record supports,
especially when the trial court's fact findings are based on an evaluation of credibility and
demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the same
amount of deference to trial courts' rulings on mixed questions of law and fact if the resolution
of those ultimate questions turns on an evaluation of credibility and demeanor. Id. We will
reverse only if the trial court's evidentiary rulings show an abuse of discretion. See Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). An abuse of discretion
is established "only when the trial judge's decision was so clearly wrong as to lie outside that zone
within which reasonable persons might disagree." Cantu v. State, 842 S.W.2d 667, 682 (Tex.
Crim. App. 1992), cert. denied, 509 U.S. 926 (1993). We review de novo the trial court's rulings
on purely legal questions and on mixed questions of law and fact that are not dependent on a
credibility and demeanor evaluation. Guzman, 955 S.W.2d at 89. Moreover, error may not be
predicated upon a ruling which admits or excludes evidence unless a substantial right of the party
is affected. See Tex. R. Evid. 103(a); see also Tex. R. App. P. 44.2. A trial court can deem
relevant to sentencing evidence of 


 the prior criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he is
being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal
Evidence, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant
or for which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act. 


Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a) (West Supp. 1999). 

 Magee argues that evidence was admitted over his hearsay and relevance objections. 
The reporter's record of the punishment hearing reveals that Magee raised hearsay objections to
a police officer's testimony regarding Magee's involvement in a gang called the Gangster
Disciples. Magee also objected to the police officer's testimony that Magee was involved in a
double homicide as hearsay and irrelevant. The police officer admitted that he had no
observational or physical evidence of Magee's involvement in the double homicide and that his
testimony was based entirely on the statements of DeVon Chisom and James Green.

 The same evidence was admitted without objection during the testimony of other
witnesses. William Rhymer, Magee's cellmate in Bell County Jail, testified without objection that
Magee told him he was a member of the Gangster Disciples ("GD"). (1) Magee also admitted to him
that he was with a group that robbed the Monoghan Apartments. Rhymer said Magee told him
he accompanied others while heavily drugged at the double homicide; he had a gun, but did not
shoot because he slipped and fell when the shooting started. DeVon Chisom, also a GD member,
pleaded guilty to the Monoghan Apartment aggravated robbery and the double homicide. He
testified that, while he was taking Magee to the hospital to get treatment for a seizure or anxiety
attack, he was ordered by gang hierarchy to kill two men. Magee, Chisom, and another followed
the murder victims. All three attackers had guns; Magee was still moderately sedated. Chisom
admitted firing, but did not know if Magee had fired. Chisom testified they were given the same
guns before the Monoghan Apartments robbery. He also testified that they were ordered to kill
the witnesses at the apartments and that Magee had reservations about that. 

 The overruling of Magee's objections to the police officer's testimony does not
require reversal. Chisom's testimony that Magee was a gang member and accompanied him to
both the double homicide and the apartment robbery was not hearsay and erased any hearsay
problem with the police officer's testimony. The trial court did not abuse its discretion by
deeming the double-homicide testimony admissible because, on the record presented, Magee could
be convicted as a party to the double homicide. Under the standard governing relevance of
evidence at the punishment phase, which differs from the more restrictive rules at guilt/innocence,
the trial court did not err by deeming this evidence relevant and admissible. We overrule point
two.




CONCLUSION


 Having overruled both points of error, we affirm the judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: August 26, 1999

Do Not Publish
1. Rhymer also referred to the gang as "74" and "GD Folk". We assume the numeric name
is based on the fact that G and D are the seventh and fourth letters of the alphabet. Chisom
testified that "GD" also stands for growth and development. Chisom was a GD while a specialist
on active duty in the United States Army and stationed at Fort Hood.



family: CG Times Regular"> the prior criminal record of the defendant, his general reputation, his character, an
opinion regarding his character, the circumstances of the offense for which he is
being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal
Evidence, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant
or for which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act. 


Tex. Crim. Proc. Code Ann. art. 37.07, § 3(a) (West Supp. 1999). 

 Magee argues that evidence was admitted over his hearsay and relevance objections. 
The reporter's record of the punishment hearing reveals that Magee raised hearsay objections to
a police officer's testimony regarding Magee's involvement in a gang called the Gangster
Disciples. Magee also objected to the police officer's testimony that Magee was involved in a
double homicide as hearsay and irrelevant. The police officer admitted that he had no
observational or physical evidence of Magee's involvement in the double homicide and that his
testimony was based entirely on the statements of DeVon Chisom and James Green.

 The same evidence was admitted without objection during the testimony of other
witnesses. William Rhymer, Magee's cellmate in Bell County Jail, testified without objection that
Magee told him he was a member of the Gangster Disciples ("GD"). (1) Magee also admitted to him
that he was with a group that robbed the Monoghan Apartments. Rhymer said Magee told him
he accompanied others while heavily drugged at the double homicide; he had a gun, but did not
shoot because he slipped and fell when the shooting started. DeVon Chisom, also a GD member,
pleaded guilty to the Monoghan Apartment aggravated robbery and the double homicide. He
testified that, while he was taking Magee to the hospital to get treatment for a seizure or anxiety
attack, he was ordered by gang hierarchy to kill two men. Magee, Chisom, and another followed
the murder victims. All three attackers had guns; Magee was still moderately sedated. Chisom
admitted firing, but did not know if Magee had fired. Chisom testified they were given the same
guns before the Monoghan Apartments robbery. He also testified that they were ordered to kill
the witnesses at the apartments and that Magee had reservations about that. 

 The overruling of Magee's objections to the police officer's testimony does not
require reversal. Chisom's testimony that Magee was a gang member and accompanied him to
both the double homicide and the apartment robbery was not hearsay and erased any hearsay
problem with the police officer's testimony. The trial court did not abuse its discretion by
deeming the double-homicide testimony admissible because, on the record presented, Magee could
be convicted as a party to the double homicide. Under the standard governing relevance of
evidence at the punishment phase, which differs from the more restrictive rules at guilt/innocence,
the trial court did not err by deeming this evidence relevant and admissible. We overrule point
two.




CONCLUSION


 Having overruled both points of error, we affirm the judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: August 26, 1999